**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| CAMERON J. WILLIAMS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No.: 23-1417-MN-SRF |
| | ) | |
| WALMART, INC. and SAM'S WEST | ) | |
| INC. d/b/a/ SAM'S CLUB, | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

Pending before the court in this employment discrimination action are cross-motions for summary judgment filed by Defendants, Walmart, Inc. and Sam's West Inc. d/b/a Sam's Club (collectively "Walmart")[1] and Plaintiff, Cameron Williams ("Plaintiff"), who is a *pro se* litigant.[2] (D.I. 46; 53)  For the reasons set forth below, the court recommends granting Walmart's Motion for Summary Judgment.

## I.    BACKGROUND

It is undisputed by the parties that on July 23, 2022, the Plaintiff sustained a work-related injury while employed at the Walmart Distribution Center in Smyrna, Delaware ("DC #7034"). (D.I. 49 at A19–A22; A84 at 34:1–8; D.I. 53 at 2)  According to the complaint, Plaintiff alleges that he was wrongfully discharged from his employment on September 17, 2022.  (D.I. 2 at 4)

Plaintiff injured his lower back and reported the injury to his Floor Supervisor on July 23, 2022, around 11:45 p.m. (D.I. 49 at A19–A22; A84 at 34:1–8)  Due to his injury, Plaintiff was

---

[1] The briefing associated with this motion is found at D.I. 47, 48, 51, 52, 57.
[2] The briefing associated with this motion is found at D.I. 53, 55, 58.

1

unable to complete his shift. (*Id.* at A84, 37:3–23)  On July 25, 2022, the Plaintiff reported for his shift but complained of pain, so Walmart referred him to Pivot Occupational Health Dover ("Pivot") for a workers' compensation evaluation. [3] (*Id.* at A23–A24; A84, 37:3–A85, 38:14) The treating medical provider at Pivot diagnosed Plaintiff with a lumbar strain and cleared him to return to work that day with light duty restrictions. (*Id.* at A23–A24)  Walmart offered Plaintiff a light duty position under its "Temporary Alternate Duty Program" ("TAD"), which provides temporary positions or modified job duties for employees released on medical restrictions by their health care provider following a work-related injury. (*Id.* at A25)  Plaintiff signed and accepted the TAD position on July 25, 2022. (*Id.*)  Plaintiff continued in the TAD position with light duty restrictions through his re-evaluation on August 1, 2022.  (*Id.* at A26-A27)

Plaintiff called out of work on August 7 and August 8, 2022, and received one "occurrence" for each unauthorized absence.  (*Id.* at A76; A158; A169; A170)  An "occurrence" is Walmart's parlance under its formal Attendance Policy for an unauthorized absence.[4]  (*Id.* at A2) According to Walmart, before the Plaintiff's injury on the job, he had accumulated two occurrences for unauthorized absences on June 20 and June 27, 2022.  (*Id.* at A76)  Plaintiff called out of work on two additional dates, August 13 and August 14, 2022. (*Id.*)

---

[3] Plaintiff fully resolved his workers' compensation claim through a settlement. (*Id.* at A97 at 90:22–91:18)

[4] Under Walmart's Attendance Policy "[an] unauthorized absence will result in occurrences/points. If you accumulate five (5) or more occurrences/points in a rolling six-month period, you will be subject to termination." (*Id.* at A2)

On August 15, 2022, Plaintiff submitted a leave of absence ("LOA") request through Sedgwick, Walmart's third-party administrator for employee leave and disability accommodation requests, covering August 13 through September 12, 2022. (*Id.* at A32–A35)

Following his medical re-evaluation on August 15, 2022, Plaintiff remained restricted to light duty work and continued in his TAD position until August 29, 2022, when he was re-evaluated. (*Id.* at A29–A30) His medical provider released Plaintiff to return to work with the same light duty restrictions. (*Id.* at A 58-59) Walmart offered Plaintiff the same light duty TAD position but Plaintiff refused the TAD position. (*Id.* at A60; A91 at 65:17–A92 at 66:3) On September 6, 2022, Plaintiff's LOA request was denied because "[m]edical information was not provided to support the requested timeframe by the medical due date." (A66)

At Plaintiff's next medical re-evaluation on September 8, 2022, his provider increased his employment restrictions from light duty to sedentary. (*Id.* at A72–73) On September 10, 2022, Walmart offered Plaintiff a sedentary TAD position accommodating the increased restrictions. Plaintiff called out of work on September 11, 2022. (*Id.* at A74, A93 at 72:12–15; A76)

Plaintiff reported for his shift on September 17, 2022, and was called into a meeting with a supervisor where he was informed of his termination for exceeding the permitted number of absences under the Attendance Policy. (*Id.* at A93 at 73:21–A94 at 74:10; A101, ¶14) Plaintiff had accumulated seven occurrences for unauthorized absences from June through September of 2022. (*Id.*) Plaintiff was walked out of DC #7034 upon notice of his termination. (*Id.*)

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), received notification that he could file a lawsuit against his employer within 90 days, and timely commenced this action. (D.I. 2 at 4; *see also* D.I. 2-1 at 1) Defendants

filed a partial motion to dismiss Plaintiff's claims for defamation and "filing a false claim to EEOC," which was granted on August 18, 2025. (D.I. 28) Therefore, the only remaining claims in the suit are Plaintiff's allegations of wrongful termination due to his disability and retaliation for filing a workers' compensation claim. (*Id.*) The parties filed cross motions for summary judgment, and the case was referred to the undersigned magistrate judge to hear and resolve all pretrial matters, up to and including the resolution of case-dispositive motions, subject to 28 U.S.C. § 636(b). (D.I. 54)

## II.    LEGAL STANDARD

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n. 10 (1986). "Facts that could alter the outcome are material, and disputes are genuine if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.' *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pennsylvania Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient

4

for denial of a motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). There must be enough evidence to enable a jury to reasonably find for the nonmoving party on that issue. *See id.* If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The standard by which the court decides a summary judgment motion does not change when the parties file cross-motions. *Appelmans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987). Cross-motions for summary judgment:

> [A]re no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.

*Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968). "The filing of Cross-motions for summary judgment does not require the court to grant summary judgment for either party." *United Ass'n of Journeymen & Apprentice Plumbers & Pipefitters v. Int'l Bhd. of Elec. Workers*, C.A. No. 12–1060–GMS–SRF, 2015 WL 1516948, at 2 (D. Del. Mar. 31, 2015), *aff'd*, 643 Fed. App'x 133 (3d Cir. 2016) (quoting *Krupa v. New Castle Cnty.*, 732 F. Supp. 497, 505 (D. Del. 1990)).

## III.    DISCUSION

Walmart moves for summary judgment in its favor on Plaintiff's claims of wrongful termination and/or failure to accommodate his disability under the Americans with Disabilities Act, 42 U.S.C. § 12112(a), ("ADA") and Delaware Persons with Disabilities Employment

5

Protections Act, 19 *Del. C.* § 724, ("DPDEPA") and on Plaintiff's retaliation claims under Delaware's workers' compensation statute, the ADA and DPDEPA. [5](D.I. 47 at 2)

Plaintiff moves for summary judgment in his favor on his claims that the Defendants discriminated against him due to his "physical limitations" and retaliated against him for filing a workers' compensation claim.[6] (D.I. 54 at 3-4)  Plaintiff also seeks summary judgment on his claims that Defendants falsified its records and defamed him.[7]  (*Id.* at 5) The court will not address Plaintiff's motion as to his claims of defamation and falsifying records because they have already been substantively addressed and dismissed by the District Judge in an earlier opinion.  (D.I. 28 at 5)

### A. Summary Judgment Should Be Granted on Plaintiff's Claims of Disability Discrimination and Failure to Accommodate

The Plaintiff is *pro se*, so the court liberally construes his pleadings and briefing. *See Rivera v. Monko*, 37 F.4th 909, 914 (3d Cir. 2022). Although the Plaintiff has not identified the statutes under which he claims unlawful disability discrimination, the court will address the claims under the ADA and DPDEPA.  (D.I. 2)

---

[5] "Delaware's employment discrimination laws are substantially the same as its federal counterparts, and it is appropriate to apply federal case law to discrimination claims raised under the DDEA or DPDEPA." *Tolliver v. Delmarva Found. for Med. Care,* No. CV 17-1776-RGA, 2019 WL 4169881, at *2 (D. Del. Sept. 3, 2019)

[6] Plaintiff claims the conduct of Defendants "constitutes discrimination under applicable federal and/or state law, including the American with Disabilities Act (if applicable)."  (D.I. 53 at 4)

[7] These claims rest on allegations that Walmart's records inaccurately state that the Plaintiff failed to call in to work and/or failed to show up for work on dates after his termination on September 17, 2022, and that Walmart falsely reported to the EEOC that Plaintiff was not terminated but refused to show up or report to work. (D.I. 53 at 4) Walmart admits that inaccurate information appears in some of its records, but these facts are irrelevant to the outcome of the pending motions because the erroneous information played no part in its decision to terminate the Plaintiff's employment. (D.I. 55 at 18) Therefore, the court will not consider or rely on the inaccurate information in making its recommendations.

Claims of disability discrimination under the ADA and DPDEPA are subject to the *McDonnell-Douglas* burden-shifting analysis. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). To establish a *prima facie* case of discrimination, the Plaintiff must prove he: (1) has a disability; (2) is a qualified individual; (3) suffered an adverse employment action; and (4) that there is some evidence giving rise to an inference of discriminatory intent. *Walker v. E.I. Dupont De Nemours & Co.,* 199 F. Supp. 3d 883, 894 (D. Del. 2016); *Turner v. Hershey Chocolate U.S.,* 440 F.3d 604, 611 (3d Cir.2006). In a disparate treatment case, the Plaintiff must also prove that his disability actually motivated Walmart's decision. *Lehenky v. Toshiba Am. Energy Sys. Corp.,* 2023 WL 3562981, at *2 (3d Cir. May 19, 2023) (citing *Raytheon Co. v. Hernandez,* 540 U.S. 44, 52 (2003) (holding "[l]iability in a disparate-treatment case depends on whether the protected trait ... actually motivated the employer's decision."))

If Plaintiff establishes a *prima facie* case, the burden shifts to Walmart to "articulate a legitimate nondiscriminatory rationale" for the adverse employment action. *Tomasso v. Boeing Co.,* 445 F.3d 702, 706 (3d Cir. 2006) ([t]his burden is relatively light, and the employer need only introduce evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision) (cleaned up). If Walmart articulates a legitimate nondiscriminatory reason for Plaintiff's termination, the burden shifts back to the Plaintiff to "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie,* 32 F.3d 759, 763 (3d Cir. 1994).

With respect to the Plaintiff's *prima facie* case, "Walmart does not dispute that Plaintiff was a disabled person within the meaning of the ADA or DPDEPA, or that his employment was terminated." (D.I. 47 at 14)  However, Walmart contends that the Plaintiff fails to meet his burden of showing that he is a qualified individual with a disability and can point to no evidence that raises an inference of discrimination.  (*Id.*)

To be a qualified individual, Plaintiff must have been able to satisfactorily perform the essential functions of his job, with or without an accommodation, at the time of his termination. *Fiorentini v. William Penn Sch. Dist.*, 665 F. *App'x* 229, 236–37 (3d Cir. 2016) ("a plaintiff must . . . demonstrate that s/he satisfies the requisite skill, experience, education and other job-related requirements of the employment position that such individual holds or desires." (*quoting Skerski v. Time Warner Cable Co.*, 257). The court recommends finding that, at the time of his termination, the Plaintiff could not satisfactorily perform the essential functions of his job, with or without an accommodation.  When Plaintiff began his employment at Walmart, he was hired as an Orderfiller in the Caselot Department at DC #7034. (D.I. 49 at A80 at 20:12–19)  The essential functions of the Orderfiller position require employees to process and transport merchandise while performing physically demanding tasks, including prolonged standing and walking, climbing, bending, lifting, and moving up to 60 pounds without assistance.  (*Id.* at A103–A104)  The record establishes that Plaintiff could not perform the essential functions of his Orderfiller position, with or without a reasonable accommodation, at the time of his termination. (*Id.* at A23-A30)  Although his treating providers released him to return to work under light duty and later sedentary-duty restrictions, those restrictions eliminated numerous essential job functions, including lifting up to 60 pounds, prolonged standing and walking, climbing, bending, twisting, and other physically demanding tasks required by the position.  (*Id.*)

Plaintiff's employment restrictions are undisputed. Moreover, Plaintiff admitted in his deposition testimony that his restrictions made it impossible for him to perform the essential duties of his job as an Orderfiller regardless of an accommodation. (*Id.* at A84-A86) Therefore, no material issue of fact exists that Plaintiff is not a qualified individual under the ADA or DPDEPA.

Furthermore, no material issue of fact exists over the lack of evidence raising any inference of discrimination. Plaintiff was terminated in accordance with Walmart Attendance Policy for accumulating five or more occurrences in a rolling six-month period. (*Id.* at A76; A101, ¶13; A170) Plaintiff does not assert he was treated differently than other similarly situated individuals. The record is undisputed that Plaintiff was offered TAD work within his restrictions by Walmart. (*Id.* at A56; A25; A28; A31; A60; A74)

Plaintiff's misconception that he was on "short term disability" because of his LOA request is not a sufficient basis to avoid summary judgment. (*Id.* at A92 at 66:4–67:23; A93 at 72:16–23) No reasonable juror could reach such a conclusion when his request for LOA was denied on September 6, 2022. (*Id.* at A66) Thereafter, Plaintiff accepted the TAD position for sedentary work and was required to return to work. (*Id.* at A74) Nonetheless, he called out of work again on September 11, 2022, for an unauthorized reason, and the accumulation of five occurrences as of September 17, 2022, violated the Attendance Policy, subjecting him to termination. (*Id.* at A93 at 72:12–15; A101) Therefore, I recommend finding that Walmart's application of a neutral attendance policy is a legitimate, nondiscriminatory basis to terminate an employee and Plaintiff fails to establish a *prima facie* case of discrimination.

Even if the Plaintiff could establish a *prima facie* case, he cannot demonstrate that Walmart's termination of his employment for violation of its Attendance Policy was pretextual.

Plaintiff has therefore failed to satisfy his burden, under the *McDonnell Douglas* framework, of rebutting Walmart's proffered non-discriminatory reason.

Plaintiff fails to demonstrate that an issue of fact exists concerning his claim that Walmart failed to accommodate his disability. To state a claim for failure to accommodate based on disability, the Plaintiff must establish: (1) he is an individual with a disability under the ADA or DPDEPA; (2) he can perform the essential functions of his position with accommodation; (3) Walmart had notice of his alleged disability; and (4) he was denied a reasonable accommodation. *Conneen v. MBNA Am. Bank, N.A.,* 182 F. Supp. 2d 370, 376–77 (D. Del. 2002), *aff'd,* 334 F.3d 318 (3d Cir. 2003) (citing *Rhoads v. F.D.I.C.* 257 F.3d 373, 387 n. 11 (4th Cir.2001); *Mitchell v. Washingtonville Cent. School Dist.,* 190 F.3d 1, 6 (2d Cir.1999)). Here, for the reasons previously addressed, Plaintiff admits that he could not perform his job as an Orderfiller with or without reasonable accommodations, *supra.* The physical restrictions on employment required by his medical provider precluded him from working as an Orderfiller. (D.I. 49 at A104–104) Moreover, Walmart accommodated Plaintiff's light duty and sedentary duty restrictions by placing him in TAD positions.[8] Plaintiff admits that the only work he could perform at the time of his termination was sedentary. (*Id.* at A99 at 114:15–115:2)

## B. Walmart Should Be Granted Summary Judgment on Plaintiff's Retaliation Claims

Delaware law prohibits an employer from retaliating against an employee because the employee claimed or attempted to claim workers' compensation benefits. *19 Del. C.* § 2365. To establish a *prima facie* case for Delaware workers' compensation retaliation, Plaintiff must show

---

[8] Defendants contend that to the extent Plaintiff claims he was denied a reasonable accommodation because his LOA request was denied, it was denied because Plaintiff failed to provide the necessary medical information. (A66)

that: (1) he exercised his rights under Delaware's Workers' Compensation Act; (2) Walmart took an adverse employment action against him; and (3) there was a causal connection between his exercise of rights and the adverse employment action. *Gilliss v. Dentsply, LLC,* 116 F. Supp. 3d 433, 438 (D. Del. 2015) (*citing Santora v. Red Clay Consol. School Dist.,* 901 F.Supp.2d 482, 491 (D.Del.2012), *aff'd,* 580 Fed.Appx. 59 (3d Cir.2014)). There is no dispute that the Plaintiff suffered a work-related injury on July 23, 2022. There is no dispute that the Plaintiff was offered TAD positions consistent with his provider's restrictions on his employment duties. (D.I. 49 at A4; A66; A74) The record establishes that the Plaintiff was terminated for failure to comply with his employer's Attendance Policy. Thus, no issue of fact exists with respect to the reason for Plaintiff's termination. Plaintiff has failed to demonstrate a causal connection between his claim for workers' compensation benefits and his termination.

Further, to establish a *prima facie* claim for retaliation under the ADA and DPDEPA, Plaintiff must demonstrate: (1) he engaged in protected conduct; (2) Walmart took an adverse action against him either after or contemporaneous with the protected activity; and (3) a causal link exists between his protected conduct and the adverse action. *Krouse v. American Sterilizer Co.,* 126 F.3d 494, 500 (3d Cir. 1997). The same burden-shifting analysis applies to a claim for retaliation. *Id.*

Because filing a claim for workers' compensation benefits is not considered a protected activity under the ADA or DPDEPA, Plaintiff fails to establish a *prima facie* case. *Lanza v. Postmaster Gen. of U.S.,* 570 F. *App'x* 236, 241 (3d Cir. 2014); *Garcia-Lopez v. G4S Secure Sols.,* 2018 WL 1479029, at *3 (D. Del. Mar. 26, 2018) (citations omitted).

Moreover, Plaintiff has no cause of action for retaliation for requesting a LOA to the extent it may be considered a request for an accommodation. LOA requests were delegated to a third-

11

party administrator, Sedgwick. (D.I. 49 at A101, ¶6) Plaintiff has not pointed to evidence in the record connecting Sedgwick with Walmart's personnel decisions as to its employees, including termination.

## IV.   CONCLUSION

For the reasons discussed above, I recommend that the court issue an Order in the form set forth below:

## ORDER

At Wilmington this __th day of _____, 2025, IT IS ORDERED that:

1.      The Report and Recommendation issued on July 27, 2026, is **ADOPTED**.

2.      Walmart's motion for summary judgment is **GRANTED** pursuant to Fed. R. Civ. P. 56(c). (D.I. 46)

3.      Plaintiff's motion for summary judgment is **DENIED** pursuant to Fed. R. Civ. P. 56(c). (D.I. 53)

4.      The Clerk of the Court is directed to close this case.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. Any objections to the Report and Recommendation shall be limited to ten (10) double-spaced pages and filed within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b). The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the district court and the loss of certain appellate rights. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006). The parties are

12

directed to the court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated

March 7, 2022, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: July 27, 2026

Sherry R. Fallon

UNITED STATES MAGISTRATE JUDGE